1

2

3

4

5

6

7

8                    **IN THE UNITED STATES DISTRICT COURT**

9                    **FOR THE EASTERN DISTRICT OF CALIFORNIA**

10

11   AKIVA AVIKAIDA ISRAEL,                      No.  2:21-CV-1027-DMC-P

12                    Plaintiff,

13        v.                                      ORDER

14   S. GILES, et al.,

15                    Defendants.

16   _____

17               Plaintiff, a prisoner proceeding pro se, brings this civil rights action pursuant to

18   42 U.S.C. § 1983.  Pending before the Court is Plaintiff's complaint.  See ECF No. 1.

19               The Court is required to screen complaints brought by prisoners seeking relief

20   against a governmental entity or officer or employee of a governmental entity.  See 28 U.S.C.

21   § 1915A(a).  The Court must dismiss a complaint or portion thereof if it: (1) is frivolous or

22   malicious; (2) fails to state a claim upon which relief can be granted; or (3) seeks monetary relief

23   from a defendant who is immune from such relief.  See 28 U.S.C. § 1915A(b)(1), (2).  Moreover,

24   the Federal Rules of Civil Procedure require that complaints contain a ". . . short and plain

25   statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  This

26   means that claims must be stated simply, concisely, and directly.  See McHenry v. Renne, 84 F.3d

27   1172, 1177 (9th Cir. 1996) (referring to Fed. R. Civ. P. 8(e)(1)).  These rules are satisfied if the

28   complaint gives the defendant fair notice of the plaintiff's claim and the grounds upon which it

1

1  rests.  See Kimes v. Stone, 84 F.3d 1121, 1129 (9th Cir. 1996).  Because Plaintiff must allege

2  with at least some degree of particularity overt acts by specific defendants which support the

3  claims, vague and conclusory allegations fail to satisfy this standard.  Additionally, it is

4  impossible for the Court to conduct the screening required by law when the allegations are vague

5  and conclusory.

6

7                                **I.  PLAINTIFF'S ALLEGATIONS**

8           Plaintiff names the following as defendants: (1) S. Giles, the Law Library

9  Supervisor at Mule Creek State Prison (MCSP); (2) A. Eckhart, the Community Resources

10 Manager at MCSP; (3) B. Holmes, the Chief Deputy Warden at MCSP; (4) R. Szichak, an A-

11 Facility Law Library staff member at MCSP; (5) E. Hobbs, the A-Facility Captain at MCSP; (6)

12 M.K., Mailroom staff member at MCSP; (7) G. Camp, the Mailroom Supervisor at MCSP; (8) M.

13 Purintun, Mailroom staff member at MCSP; (9) R. Roy, Associate Warden at MCSP; (10) Deb

14 K., Mailroom staff member at MCSP; and (11) A. Phillips, Mailroom staff member at MCSP.

15 See ECF No. 1, pgs. 1, 2, 3, 4.  Plaintiff alleges five claims for relief.

16          Claim I

17          Plaintiff contends Defendants Giles, Eckhart, Holmes, Szichak, Hobbs, M.K.,

18 Camp, Purintun, "and others promulgated untrue legally significant information that resulted in

19 the destruction of my legal material." Id. at 5.  According to Plaintiff, on July 12, 2020, Plaintiff

20 was instructed by the "above defendants" to "page" his legal materials to the B-Facility Education

21 Office for duplication in preparation for filing with the court.  Id.  Plaintiff explains that the

22 "paging system" requires inmates to place their legal material inside an envelope marked "B-

23 Facility Education Office."  Id.  The inmate then deposits the envelope into an unsecure collection

24 box for institutional mailing.  See id.  Plaintiff states that, unbeknownst to inmates, Defendants

25 "dramatically modified aforementioned paging protocols without any prior notification. . . ."  Id.

26 Plaintiff does not specify which of the named defendants allegedly modified the paging system

27 without notification to inmates.

28 / / /

                                              2

Plaintiff states that, when he attempted to inform "Defendants" of contradictory instructions regarding the paging system "these members of Staff were, and remain, deliberately indifferent to the objectively serious risk of harm inflicted. . . ." Id.  Again, Plaintiff does not specify which named defendants he allegedly attempted to inform.  Nor does Plaintiff explain which named defendants constitute "these members of Staff."  According to Plaintiff, on July 12, 2020, his legal material addressed to the B-Facility Education Office was lost or destroyed.  See id.  Plaintiff contends that, as a result, he missed a filing deadline and was unable to respond to motions.  See id.

Claim II

Plaintiff alleges that, through 2020, Defendants Files, Camp, Szichak, and Eckhart "displayed indifference toward the integrity of the paging system. . . ." Id. at 6.  According to Plaintiff, Defendant Eckhart "used multiple institutional channels to broadcast legally significant information riddled with bad faith errors. . . ." Id.  Specifically, Plaintiff contends Eckhart used incorrect mailing addresses, incorrect contact information for the law library services beyond duplication needs, inaccurate program details for obtaining case law for active litigation, and deceptive guidelines for processing law library related programs.  See id.  Plaintiff further contends Defendant Giles "oversaw the articulation, presentation, publication, distribution, and timely revision of legally significant literature also riddled with bad faith errors. . . ." Id.  According to Plaintiff, Giles failed to execute timely updates "to the above," causing loss and/or destruction "of my original legal materials." Id.  Plaintiff states that, because no "timely notices were posted in the building," by the time he forwarded materials to B-Facility Education Office, Defendant Giles "had already signed off on dramatic modifications to the paging system. . . ." Id.  Plaintiff concludes: "Ergo, Giles, Eckhart, and Szichak instructed me to advance my legal materials to a 'dead designation,' with no functional re-routing services to safeguard against loss/destruction." Id.  Plaintiff states that, as a result, he "cannot meaningfully petition the government to address my grievances, as Defendants destroyed and/or lost my legal materials, thereby wiping out evidence, attorney-client privileged correspondence, religious documentation, and other original court papers." Id.

1

Claim III

2          Plaintiff claims that Defendants Giles, Eckhart, Szichak, Hobbs, Camp, Purintun,

3   M.K., Holmes, Deb K., Phillips, Roy "and others intentionally deprived me of my personal and

4   legal property without just compensation or due process of law." Id. at 7. Plaintiff states this was

5   accomplished by way of conflicting information "shown on the institutional channels, and the

6   paging system instruction sheet showing differing/contradictory/obsolete/inaccurate/false

7   information about which department to send my legal materials for duplication, in preparation for

8   court filing." Id. Plaintiff claims "above Defendants" owed him a duty of care but "failed to use

9   at least ordinary professional skills in carrying out the task(s). . . ." Id. Plaintiff states that none

10  of the Defendants has issued him compensation. See id. Plaintiff states that Defendant Holmes

11  denied his administrative grievance at the first level. See id.

12

Claim IV

13         Plaintiff claims Defendants Giles, Eckhart, Szichak, Hobbs, Holmes, M.K., Camp,

14  "and others" destroyed his mail. Id. at 8. Plaintiff again references the "paging system"

15  described above. Id. Plaintiff contends the destruction and/or loss of his materials by way of

16  "fallacious information advertised on institutional channels and paging instruction sheet"

17  constitutes a "perpetual censoring of my letters. . .and silencing of my speech, freedom of

18  expression, and right to send and receive what Defendants destroyed." Id.

19

Claim V

20         Without reference to any named defendant, Plaintiff claims that the materials he

21  "paged" on July 12, 2020, contained "material invaluable for pursing a challenge to the length

22  and validity of his custody. Id. at 9.

23

24                                 **II. DISCUSSION**

25         The Court finds Plaintiff's complaint suffers from one primary defect. In

26  particular, as to all of Plaintiff's claim, he fails to sufficiently link the conduct of any particular

27  named defendant to a specific constitutional or statutory violation.

28  / / /

4

1       To state a claim under 42 U.S.C. § 1983, the plaintiff must allege an actual

2   connection or link between the actions of the named defendants and the alleged deprivations.  See

3   Monell v. Dep't of Social Servs., 436 U.S. 658 (1978); Rizzo v. Goode, 423 U.S. 362 (1976).  "A

4   person 'subjects' another to the deprivation of a constitutional right, within the meaning of

5   § 1983, if he does an affirmative act, participates in another's affirmative acts, or omits to perform

6   an act which he is legally required to do that causes the deprivation of which complaint is made."

7   Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).  Vague and conclusory allegations

8   concerning the involvement of official personnel in civil rights violations are not sufficient.  See

9   Ivey v. Board of Regents, 673 F.2d 266, 268 (9th Cir. 1982).  Rather, the plaintiff must set forth

10  specific facts as to each individual defendant's causal role in the alleged constitutional

11  deprivation.  See Leer v. Murphy, 844 F.2d 628, 634 (9th Cir. 1988).

12      Supervisory personnel are generally not liable under § 1983 for the actions of their

13  employees.  See Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989) (holding that there is no

14  respondeat superior liability under § 1983).  A supervisor is only liable for the constitutional

15  violations of subordinates if the supervisor participated in or directed the violations.  See id.  The

16  Supreme Court has rejected the notion that a supervisory defendant can be liable based on

17  knowledge and acquiescence in a subordinate's unconstitutional conduct because government

18  officials, regardless of their title, can only be held liable under § 1983 for his or her own conduct

19  and not the conduct of others.  See Ashcroft v. Iqbal, 556 U.S. 662, 676 (2009).  Supervisory

20  personnel who implement a policy so deficient that the policy itself is a repudiation of

21  constitutional rights and the moving force behind a constitutional violation may, however, be

22  liable even where such personnel do not overtly participate in the offensive act.  See Redman v.

23  Cnty of San Diego, 942 F.2d 1435, 1446 (9th Cir. 1991) (en banc).

24      When a defendant holds a supervisory position, the causal link between such

25  defendant and the claimed constitutional violation must be specifically alleged.  See Fayle v.

26  Stapley, 607 F.2d 858, 862 (9th Cir. 1979); Mosher v. Saalfeld, 589 F.2d 438, 441 (9th Cir.

27  1978).  Vague and conclusory allegations concerning the involvement of supervisory personnel in

28  civil rights violations are not sufficient.  See Ivey, 673 F.2d at 268.  "[A] plaintiff must plead that

1  each Government-official defendant, through the official's own individual actions, has violated

2  the constitution." Iqbal, 662 U.S. at 676.

3        Here, Plaintiff's claims consistently reference Defendants as a group or, where

4  particular defendants are named, they are named together with the addendum "and others."

5  Where Plaintiff does reference specific named defendants, he does not reference specific conduct

6  of each named defendants that would suggest the violation of a constitutional or statutory right.

7  Plaintiff will be provided an opportunity to amend his claim to state which defendants took which

8  specific action that caused which violation.  As to each named defendant, Plaintiff must allege

9  Defendant X took Y action that caused violation Z.

10        In filing his amended complaint, Plaintiff may wish to keep in mind the following

11  legal principles relating to the theories he appears to advance:

12        **A.**    **Access to Courts**

13        Prisoners have a First Amendment right of access to the courts.  See Lewis v.

14  Casey, 518 U.S. 343, 346 (1996); Bounds v. Smith, 430 U.S. 817, 821 (1977); Bradley v. Hall, 64

15  F.3d 1276, 1279 (9th Cir. 1995) (discussing the right in the context of prison grievance

16  procedures).  This right includes petitioning the government through the prison grievance process.

17  See id.  Prison officials are required to "assist inmates in the preparation and filing of meaningful

18  legal papers by providing prisoners with adequate law libraries or adequate assistance from

19  persons trained in the law." Bounds, 430 U.S. at 828.  The right of access to the courts, however,

20  only requires that prisoners have the capability of bringing challenges to sentences or conditions

21  of confinement.  See Lewis, 518 U.S. at 356-57.  Moreover, the right is limited to non-frivolous

22  criminal appeals, habeas corpus actions, and § 1983 suits.  See id. at 353 n.3 & 354-55.

23  Therefore, the right of access to the courts is only a right to present these kinds of claims to the

24  court, and not a right to discover claims or to litigate them effectively once filed.  See id. at 354-

25  55.

26  / / /

27  / / /

28  / / /

As a jurisdictional requirement flowing from the standing doctrine, the prisoner must allege an actual injury.  See id. at 349.  "Actual injury" is prejudice with respect to contemplated or existing litigation, such as the inability to meet a filing deadline or present a non-frivolous claim.  See id.; see also Phillips v. Hust, 477 F.3d 1070, 1075 (9th Cir. 2007).  Delays in providing legal materials or assistance which result in prejudice are "not of constitutional significance" if the delay is reasonably related to legitimate penological purposes.  Lewis, 518 U.S. at 362.

**B.      Inmate Mail**

Prisoners have a First Amendment right to send and receive mail.  See Witherow v. Paff, 52 F.3d 264, 265 (9th Cir. 1995) (per curiam).  Prison officials may intercept and censor outgoing mail concerning escape plans, proposed criminal activity, or encoded messages.  See Procunier v. Martinez, 416 U.S. 396, 413 (1974); see also Witherow, 52 F.3d at 266.  Based on security concerns, officials may also prohibit correspondence between inmates.  See Turner v. Safley, 482 U.S. 78, 93 (1987).  Prison officials may not, however, review outgoing legal mail for legal sufficiency before sending them to the court.  See Ex Parte Hull, 312 U.S. 546, 549 (1941).  Incoming mail from the courts, as opposed to mail from the prisoner's attorney, for example, is not considered "legal mail."  See Keenan v. Hall, 83 F.3d 1083, 1094 (9th Cir. 1996), amended by 135 F.3d 1318 (9th Cir. 1998).

Specific restrictions on prisoner legal mail have been approved by the Supreme Court and Ninth Circuit.  For example, prison officials may require that mail from attorneys be identified as such and open such mail in the presence of the prisoner for visual inspection.  See Wolff v. McDonnell, 418 U.S. 539, 576-77 (1974); Sherman v. MacDougall, 656 F.2d 527, 528 (9th Cir. 1981).  Whether legal mail may be opened outside the inmate's presence, however, is an open question in the Ninth Circuit.  See Sherman, 656 F.2d at 528; cf. Mann v. Adams, 846 F.2d 589, 590-91 (9th Cir. 1988) (per curiam) (concluding mail from public agencies, public officials, civil rights groups, and news media may be opened outside the prisoner's presence in light of security concerns).  At least three other circuits have concluded that legal mail may not be opened outside the inmate's presence.  See id. (citing Taylor v. Sterrett, 532 F.2d 462 (5th Cir. 1976),

1   Back v. Illinois, 504 F.2d 1100 (7th Cir. 1974) (per curiam), and Smith v. Robbins, 452 F.2d 696

2   (1st Cir. 1972)); see also Samonte v. Maglinti, 2007 WL 1963697 (D. Hawai'i July 3, 2007)

3   (recognizing open question).

4        **C.**     **Loss or Destruction of Property**

5        Where a prisoner alleges the deprivation of a liberty or property interest caused by

6   the random and unauthorized action of a prison official, there is no claim cognizable under 42

7   U.S.C. § 1983 if the state provides an adequate post-deprivation remedy.  See Zinermon v. Burch,

8   494 U.S. 113, 129-32 (1990); Hudson v. Palmer, 468 U.S. 517, 533 (1984).  A state's post-

9   deprivation remedy may be adequate even though it does not provide relief identical to that

10  available under § 1983.  See Hudson, 468 U.S. at 531 n.11.  A due process claim is not barred,

11  however, where the deprivation is foreseeable and the state can therefore be reasonably expected

12  to make pre-deprivation process available.  See Zinermon, 494 U.S. at 136-39.   An available

13  state common law tort claim procedure to recover the value of property is an adequate remedy.

14  See id. at 128-29.

15

16       **III.  CONCLUSION**

17       Because it is possible that the deficiencies identified in this order may be cured by

18  amending the complaint, Plaintiff is entitled to leave to amend prior to dismissal of the entire

19  action.  See Lopez v. Smith, 203 F.3d 1122, 1126, 1131 (9th Cir. 2000) (en banc).  Plaintiff is

20  informed that, as a general rule, an amended complaint supersedes the original complaint.  See

21  Ferdik v. Bonzelet, 963 F.2d 1258, 1262 (9th Cir. 1992).  Thus, following dismissal with leave to

22  amend, all claims alleged in the original complaint which are not alleged in the amended

23  complaint are waived.  See King v. Atiyeh, 814 F.2d 565, 567 (9th Cir. 1987).  Therefore, if

24  Plaintiff amends the complaint, the Court cannot refer to the prior pleading in order to make

25  Plaintiff's amended complaint complete.  See Local Rule 220.  An amended complaint must be

26  complete in itself without reference to any prior pleading.  See id.

27  / / /

28  / / /

8

1        If Plaintiff chooses to amend the complaint, plaintiff must demonstrate how the

2    conditions complained of have resulted in a deprivation of Plaintiff's constitutional rights.  See

3    Ellis v. Cassidy, 625 F.2d 227 (9th Cir. 1980).  The complaint must allege in specific terms how

4    each named defendant is involved, and must set forth some affirmative link or connection

5    between each defendant's actions and the claimed deprivation.  See May v. Enomoto, 633 F.2d

6    164, 167 (9th Cir. 1980); Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).

7        Finally, Plaintiff is warned that failure to file an amended complaint within the

8    time provided in this order may be grounds for dismissal of this action.  See Ferdik, 963 F.2d at

9    1260-61; see also Local Rule 110.  Plaintiff is also warned that a complaint which fails to comply

10   with Rule 8 may, in the Court's discretion, be dismissed with prejudice pursuant to Rule 41(b).

11   See Nevijel v. North Coast Life Ins. Co., 651 F.2d 671, 673 (9th Cir. 1981).

12        Accordingly, IT IS HEREBY ORDERED that:

13        1.    Plaintiff's complaint is dismissed with leave to amend; and

14        2.    Plaintiff shall file a first amended complaint within 30 days of the date of

15   service of this order.

16

17   Dated:  August 24, 2021

18                                              _____
                                                DENNIS M. COTA
19                                              UNITED STATES MAGISTRATE JUDGE

20

21

22

23

24

25

26

27

28