IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AKIVA AVIKAIDA ISRAEL,<br><br>Plaintiff,<br><br>v.<br><br>S. GILES, et al.,<br><br>Defendants. | No. 2:21-CV-01027-DAD-DMC-P<br><br><br><br>ORDER |

Plaintiff, a prisoner proceeding pro se, brings this civil rights action pursuant to 42 U.S.C. § 1983. Pending before the Court is Plaintiff's first amended complaint. See ECF No. 16.

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. See 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if it: (1) is frivolous or malicious; (2) fails to state a claim upon which relief can be granted; or (3) seeks monetary relief from a defendant who is immune from such relief. See 28 U.S.C. § 1915A(b)(1), (2). Moreover, the Federal Rules of Civil Procedure require that complaints contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This means that claims must be stated simply, concisely, and directly. See McHenry v. Renne, 84 F.3d 1172, 1177 (9th Cir. 1996) (referring to Fed. R. Civ. P. 8(e)(1)). These rules are satisfied if the

complaint gives the defendant fair notice of the plaintiff's claim and the grounds upon which it rests. See Kimes v. Stone, 84 F.3d 1121, 1129 (9th Cir. 1996).

In order to survive dismissal for failure to state a claim, a complaint must contain factual allegations sufficient "to raise a right to relief above the speculative level." Bell Atl. Corp v. Twombly, 550 U.S. 544, 555-56 (2007). The complaint must contain "enough facts to state a claim to relief that is plausible on its face." Id. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. (quoting Twombly, 550 U.S. at 556). The mere possibility of misconduct will not suffice to meet this standard. See id. at 679. Because Plaintiff must allege with at least some degree of particularity overt acts by specific defendants that support the claims, vague and conclusory allegations fail to satisfy this standard.

## I. PLAINTIFF'S ALLEGATIONS

Plaintiff names the following as defendants: (1) S. Gyles, Senior Law Librarian; (2) C. Clevenger, Principal; (3) Ryan Szichak, Law Librarian; (4) M. Huerta, T.V. Specialist; (5) H. Kim, T.V. Specialist; (6) B. Heath, Law Librarian; (7) E. Gyles, LTA; (8) D. Binnall, OA; (9) L. Samprucci, OT; (10) V. Darrow, OT; (11) A. Wohlers, Vice Principal; (12) Erick Hobbs, Facility A Captain; (13) Damon Huser, Associate Warden of Program and Housing Facilities A, B, & C; (14) G. Camp, Mailroom Supervisor; (15) Jean Weiss, Associate Warden of Business Services; (16) Keith Rodgers, Facility B Captain; (17) Lance Eshelman, Community Resources Manager; (18) A. Echart, CRM Pro-Temp; (19) Bryan Holmes, Chief Deputy Warden; (20) M. Purintun, mailroom staff; (21) R. Roy, Associate Warden; (22) Deb K., mailroom staff; (23) M.K., mailroom staff; (24) K. Gibbs, mailroom staff; (25) A. Phillips, mailroom staff; (26) Patrick Coveelo, Warden; and (27) D. Pulley, CTE AP. See ECF No. 16, pgs. 1-5. All named Defendants were employed at Mule Creek State Prison, Ione when the alleged violations occurred. See id. Plaintiff does not indicate whether the named Defendants are being sued in

their individual or official capacity. See id.

In her first amended complaint[1], Plaintiff alleges twelve claims for relief. See generally id., pgs. 6-28. At times, Plaintiff's allegations are rambling, incoherent, and hard to decipher as Plaintiff repeats numerous, often irrelevant, factual allegations. However, the Court understands the following to be the nature of Plaintiff's claims.

Plaintiff alleges violations of the First, Eighth, and Fourteenth Amendments. See id. Generally, Plaintiff alleges that on or around July 12, 2021, she attempted to follow the procedures laid out by Mule Creek State Prison to send out legal materials. Id. pg. 7. Plaintiff contends that one step of the procedure required by the prison is that prisoners must "page" (send) the materials they wish to mail to an office within the prison so that they can be duplicated. See id. Plaintiff states that she followed the procedures as they were stated in the postings around the prison. See id. Plaintiff alleges that, without giving any notice in writing or otherwise, Defendants modified the prison's paging policy. See id. Plaintiff states that Defendants, prior to July 12, 2021, changed the location to which outgoing legal mail must be routed. See id. Plaintiff states that this policy change resulted in her paging her materials to a "dead location." See id. According to Plaintiff, the materials were then destroyed without her knowledge or consent. See id. Plaintiff states that this caused her to miss court deadlines as the paperwork she was sending was being sent out to be copied to preparation to be filed. Id. pg. 9. Plaintiff contends this resulted in damage to her as it prevented her from accessing the court and filing legal documents. See id.

Further, Plaintiff alleges that she was wrongfully prevented from accessing the courts as a matter of policy which, at the time the complaint was filed, had been going on for more than one hundred and eleven days. Id. pg. 22. Plaintiff outlines that the policy, known as the Institutional Rotational Schedule ("IRS"), made it so that two or three weekdays per week were known as "down days." See id. Plaintiff continues that, on these down days, the law library in the prison is closed. See id. Plaintiff continues by saying that, more often than not, she still cannot access the law library even when it is not a down day. This is because, depending on the

---

[1] Plaintiff is a transgender inmate who uses female pronouns.

3

prison's schedule for the day, she may not be allowed access until to the law library 2:00 pm, which is when the library stops allowing entry. Id. pg. 23. Plaintiff expresses that the result of the IRS is that she has access to the law library approximately once per week if at all and that it is common for her to not have access for multiple weeks at a time. See id.

In addition, Plaintiff describes one occasion on August 19, 2021, when she gave Defendant Gyles paperwork for filing purposes. Id. pg. 26. Plaintiff states that she watched as Defendant Gyles went into the back of the law library with her paperwork in hand. See id. According to Plaintiff, Defendant Gyles returned within less than an hour and told her that he had read her paperwork. Id. pg. 27. Plaintiff explains that the materials Defendant Gyles read involved privileged legal paperwork and that she had not consented to Defendant Gyles's actions. See id.

Plaintiff alleges that in response to filing the grievance regarding the prison's paging system, Law Librarian, Defendant Szichak retaliated against Plaintiff by disclosing Plaintiff's confidential legal information to staff and inmates. Id. pg. 14. Plaintiff further alleges that Defendant Szichak told staff that he would "chill [Plaintiff's] chances at being interviewed for a library position" and would only issue a pass for the interview when Plaintiff was in quarantine. Id. pg. 15. Subsequently, Plaintiff claims Defendant Szichak issued the pass while Plaintiff was in quarantine and while the "library had suspended all in-person access." As a result, Plaintiff could not attend the interview and Defendant Szichak "refused to reschedule." Id. pg. 16.

In response to her filing an appeal, Plaintiff alleges Defendant Szichak verbally harassed her by making antisemitic, homophobic comments, and unwanted sexual advances. See id., pg. 17. Plaintiff alleges while at the library around November 25, 2020, Defendant Szichak called her a "fag," "queer," and "a Jew-Tranny." See id. Plaintiff alleges that, following these comments, Defendant Szichak stared at Plaintiff's genitals and promised Plaintiff employment in Defendant Szichak's "harem" if Plaintiff exchanged sexual favors with Defendant Szichak. See id., pgs. 17-18. Plaintiff alleges Defendant Szichak encouraged Correctional Officer Young to threaten to rape plaintiff. See id. Plaintiff alleges that Defendant Szichak's harassment caused

4

1 Plaintiff psychological distress, including loss of sleep, anguish, and further complications to her
2 post-traumatic stress disorder. See id., pg. 18. Additionally, Plaintiff communicates that
3 Defendant Szichak's harassment caused Plaintiff to "feel inhuman" and miss filing deadlines. See
4 id., pg. 17.

5 Plaintiff further alleges that her freedoms of communication and association were
6 violated due to the destruction of her legal letters, as a result of the paging system, which
7 prevented her from receiving visitors, including her attorney, and using the telephone. See id.,
8 pg. 21. Plaintiff claims that Defendants prevented and obstructed her ability to meet with visitors
9 because "until [she] made timely filings at Court, [her] visitors would not meet with [her]." Id.

10 Lastly, Plaintiff alleges that she is being discriminated against because prisoners
11 housed in facilities "D" and "E" receive more access to the law library than those being housed in
12 facilities "A", "B", and "C" which includes Plaintiff. See id., pg. 24.

## II.  DISCUSSION

In this case, it appears that Plaintiff is asserting claims based on the following theories: (1) denial of access to the courts; (2) interference with inmate mail; (3) retaliation; (4) harassment; (5) denial of equal protection; (6) loss or destruction of personal property; (7) denial of visitation; and (8) denial of association. Each of these theories and the sufficiency of Plaintiff's allegations is discussed below.

### A.  Access to Courts

Prisoners have a First Amendment right of access to the courts. See Lewis v. Casey, 518 U.S. 343, 346 (1996); Bounds v. Smith, 430 U.S. 817, 821 (1977); Jones v. Williams, 791 F.3d 1023, 1035 (9th Cir. 2015); Bradley v. Hall, 64 F.3d 1276, 1279 (9th Cir. 1995). Prison officials must "assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." Bounds, 430 U.S. at 828; Silva v. Di Vittorio, 658 F.3d 1090, 1103 (9th Cir. 2011) (overruled on other grounds as stated by Richey v. Dahne, 807 F.3d 1202, 1209 n.6 (9th Cir. 2015). But the right does not require a particular methodology. See Lewis, 518 U.S. at 356. It

guarantees the "capability of bringing contemplated challenges to sentences or conditions of confinement before the courts." Id. It does not promise to turn inmates into effective litigators. See id. at 354-55; Phillips v. Hust, 588 F.3d 652, 655 (9th Cir. 2009).

The right of access secures the ability to present non-frivolous claims to the court, it does not secure a right to discover claims or litigate them effectively once filed. See Lewis, 518 U.S. at 354-55; Phillips, 477 F.3d at 655. The tools required are those that inmates need to attack their sentences or challenge conditions of confinement. See Lewis, 518 U.S. at 355; Phillips, 477 F.3d at 655. "Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration." Lewis, 518 U.S. at 355; see Phillips, 477 F.3d at 655. The right is restricted to non-frivolous criminal appeals, civil rights actions under 42 U.S.C. § 1983, and habeas corpus petitions. Lewis, 518 U.S. at 353 n.3, 354-56.

The United States Supreme Court has identified two categories of access-to-court claims. Christopher v. Harbury, 536 U.S. 403, 412-13 (2002). The first category includes "forward-looking" claims, which allege that official action presently frustrates a plaintiff's ability to prepare and file a suit. Id. at 413. The second category, "backward-looking" claims, allege that due to official action, a specific case "cannot now be tried (or tried with all material evidence), no matter what official action may be in the future." Id. at 413-14. These cases look "backward to a time when specific litigation ended poorly, or could not have commenced, or could have produced a remedy subsequently unobtainable." Id. at 414.

To establish an access to the court violation, a prisoner must identify an actual injury. Lewis, 518 U.S. at 349-351; Nev. Dep't of Corrs. v. Greene, 648 F.3d 1014, 1018 (9th Cir. 2011); Urmancheev v. Anglea, No.:1:19-cv-00791-DAD-JLT (PC), 2020 WL 1904818, at *2 (E.D. Cal. Apr. 17, 2020). An actual injury is "actual prejudice with respect to contemplated or existing litigation, such as the inability to meet a filing deadline or to present a claim." Lewis, 518 U.S. at 349; Urmancheev, 2019 WL 1904818, at *2. An actual injury is a jurisdictional requirement and may not be waived. See Lewis, 518 U.S. at 348-52; Urmancheev, 2019 WL 1904818, at *2. And in the backward-looking context more specifically, a plaintiff must identify:

6

(1) loss of a "nonfrivolous," "arguable" underlying claim; (2) the official acts that frustrated the litigation of the underlying claim; and (3) a remedy that "may be awarded as recompense but [is] not otherwise available in some suit that may yet be brought." Harbury, 536 U.S. at 414-18; Urmancheev, 2019 WL 1904818, at *2; Kabede v. Brown, No. 2:16-cv-1765 DB (P), 2017 WL 714300, at *6 (E.D. Cal. Feb. 22, 2017).

First, Plaintiff alleges that her rights were violated due to Defendants' (specified in Claim I of the complaint) collective failure to provide notice about a change in the prison's paging system which led her to send irreplaceable legal documents to a dead location. This resulted in the destruction of the materials Plaintiff was preparing to file in court. Plaintiff's first allegation is a "backward-looking" claim as it alleges that, due to official action, she missed court deadlines. In her complaint, Plaintiff has properly identified actual injuries as the destruction of irreplaceable materials being prepared for court which resulted in the loss of the ability for Plaintiff to file a lawsuit. Plaintiff has identified the official act which frustrated the litigation as being the change in the paging system by prison officials without providing Plaintiff any written or verbal notice. Plaintiff has also identified and outlined several remedies, including declaratory judgement against the Defendants and monetary damages.

However, Plaintiff's claim fails due to the lack of pleading the loss of a nonfrivolous and arguable claim. At no point in the complaint does Plaintiff explain what claim(s) she lost resulting from missing court filing deadlines. Accordingly, it is impossible for this Court to properly assess this element, and without the ability to verify this component of the claim, Plaintiff will be provided leave to amend.

Plaintiff's second allegation, regarding the scheduling system, is "forward-looking" as it refers to an official action which, Plaintiff states, is presently frustrating her ability to prepare and file a suit. Plaintiff alleges that, at the behest and under the supervision of the multiple defendants (specified in Claim XII of the complaint), the prison initiated multiple policies which drastically inhibited Plaintiff's ability to prepare legal arguments and meet court filing deadlines. Plaintiff explains that the prison has initiated so-called "down days" which occur between two and three days a week. On these days, no prisoner, including Plaintiff, may access

the prison's law library. This leaves Plaintiff three days per week at most to access the law library. Plaintiff continues by adding that she is often not able to access the law library even on non-down days.

According to Plaintiff, this is the result of how the prison manages its schedule. Plaintiff states that it is more likely than not that she will not be allowed free access to the law library and yard until as late as 2:00 PM, which is when the law library stops allowing entry. Plaintiff goes on to allege that, even when the law library should be open and operational pursuant to all policies of the prison, on more than one occasion Plaintiff has arrived to find it closed without any notice. Plaintiff states that this has led to a situation where it is practically impossible for her to access the library for more than three hours per week, and there have been multiple occasions where she has been unable to access the law library at all for weeks at a time. Plaintiff goes on to say that, as a result of these policies and her inability to access the law library, she has been unable to prepare adequately for her five pending cases and has missed court filing deadlines, which is an actual injury.

Plaintiff's forward-looking claim, however, cannot proceed at this time because Plaintiff does not link the claim to any named defendant or defendants. Instead, she simply refers to "defendants" collectively, which is insufficient to put any particular defendant in this case on notice of the basis of her claim. Plaintiff will be provided leave to amend to clarify this claim.

**B.    Inmate Mail**

Prisoners have a First Amendment right to send and receive mail. See Witherow v. Paff, 52 F.3d 264, 265 (9th Cir. 1995) (per curiam). Prison officials may intercept and censor outgoing mail concerning escape plans, proposed criminal activity, or encoded messages. See Procunier v. Martinez, 416 U.S. 396, 413 (1974); see also Witherow, 52 F.3d at 266. Based on security concerns, officials may also prohibit correspondence between inmates. See Turner v. Safley, 482 U.S. 78, 93 (1987). Prison officials may not, however, review outgoing legal mail for legal sufficiency before sending them to the court. See Ex Parte Hull, 312 U.S. 546, 549 (1941). Incoming mail from the courts, as opposed to mail from the prisoner's attorney, for example, is not considered "legal mail." See Keenan v. Hall, 83 F.3d 1083, 1094

1 (9th Cir. 1996), amended by 135 F.3d 1318 (9th Cir. 1998).

Specific restrictions on prisoner legal mail have been approved by the Supreme Court and Ninth Circuit. For example, prison officials may require that mail from attorneys be identified as such and open such mail in the presence of the prisoner for visual inspection. See Wolff v. McDonnell, 418 U.S. 539, 576-77 (1974); Sherman v. MacDougall, 656 F.2d 527, 528 (9th Cir. 1981). Whether legal mail may be opened outside the inmate's presence, however, is an open question in the Ninth Circuit. See Sherman, 656 F.2d at 528; cf. Mann v. Adams, 846 F.2d 589, 590-91 (9th Cir. 1988) (per curiam) (concluding mail from public agencies, public officials, civil rights groups, and news media may be opened outside the prisoner's presence in light of security concerns). At least three other circuits have concluded that legal mail may not be opened outside the inmate's presence. See id. (citing Taylor v. Sterrett, 532 F.2d 462 (5th Cir. 1976), Back v. Illinois, 504 F.2d 1100 (7th Cir. 1974) (per curiam), and Smith v. Robbins, 452 F.2d 696 (1st Cir. 1972)); see also Samonte v. Maglinti, 2007 WL 1963697 (D. Hawai'i July 3, 2007) (recognizing open question).

This Court construes from the amended complaint that Plaintiff is referring to two separate instances that each independently could support Plaintiff's claim that her legal mail rights were violated. They are: (1) the instance described previously, where Plaintiff's materials were destroyed after being paged to a dead address, and (2) an instance that occurred on August 8, 2021.

Regarding the former instance, this Court finds the claim to be defective. Plaintiff states that the Defendants, specifically those referenced in Claim III of the complaint, destroyed the materials she had paged, which were intended to eventually be mailed to the court as legal filings. At no point, however, does Plaintiff allege that the materials were read by the specified defendants outside of her presence, nor does Plaintiff contend that the materials were intentionally destroyed to harm her. In essence, Plaintiff appears to be arguing that the specified defendants behaved negligently and that this resulted in a violation of Plaintiff's right to send mail. This is insufficient.

Regarding the latter instance, this Court finds the claim cognizable as against

Defendant Gyles. In Claim XII of the amended complaint, Plaintiff describes an interaction with Defendant Gyles. According to Plaintiff, she gave Gyles confidential legal documents so that they could be processed. Plaintiff then states that Gyles took the documents without Plaintiff's consent and then went into a back-room outside of the presence of Plaintiff without her consent. Plaintiff continues that Gyles came back within less than one hour and directly told Plaintiff that he had "fully read" the contents of the legal documents. Plaintiff's allegations appear to show that Gyles knowingly took a prisoner's legal documents, which had been given to him by the prisoner in order to be processed, and then without the consent of said prisoner, proceeded to leave the prisoner's presence and read the entirety of the documents. This claim is sufficient to proceed against Defendant Gyles.

### C.     Retaliation

In order to state a claim under 42 U.S.C. § 1983 for retaliation, the prisoner must establish that he was retaliated against for exercising a constitutional right, and that the retaliatory action was not related to a legitimate penological purpose, such as preserving institutional security.  See Barnett v. Centoni, 31 F.3d 813, 815-16 (9th Cir. 1994) (per curiam).  In meeting this standard, the prisoner must demonstrate a specific link between the alleged retaliation and the exercise of a constitutional right.  See Pratt v. Rowland, 65 F.3d 802, 807 (9th Cir. 1995); Valandingham v. Bojorquez, 866 F.2d 1135, 1138-39 (9th Cir. 1989).  The prisoner must also show that the exercise of First Amendment rights was chilled, though not necessarily silenced, by the alleged retaliatory conduct.  See Resnick v. Hayes, 213 F.3d 443, 449 (9th Cir. 2000), see also Rhodes v. Robinson, 408 F.3d 559, 569 (9th Cir. 2005).  Thus, the prisoner plaintiff must establish the following in order to state a claim for retaliation: (1) prison officials took adverse action against the inmate; (2) the adverse action was taken because the inmate engaged in protected conduct; (3) the adverse action chilled the inmate's First Amendment rights; and (4) the adverse action did not serve a legitimate penological purpose.  See Rhodes, 408 F.3d at 568.

As to the chilling effect, the Ninth Circuit in Rhodes observed: "If Rhodes had not alleged a chilling effect, perhaps his allegations that he suffered harm would suffice, since harm that is more than minimal will almost always have a chilling effect." Id. at n.11.  By way of

example, the court cited Pratt in which a retaliation claim had been decided without discussing chilling. See id. This citation is somewhat confusing in that the court in Pratt had no reason to discuss chilling because it concluded that the plaintiff could not prove the absence of legitimate penological interests. See Pratt, 65 F.3d at 808-09. Nonetheless, while the court has clearly stated that one of the "basic elements" of a First Amendment retaliation claim is that the adverse action "chilled the inmates exercise of his First Amendment rights," id. at 567-68, see also Resnick, 213 F.3d at 449, the comment in Rhodes at footnote 11 suggests that adverse action which is more than minimal satisfies this element. Thus, if this reading of Rhodes is correct, the chilling effect element is essentially subsumed by adverse action.

Plaintiff sufficiently alleges Defendant Szichak took adverse actions in response to Plaintiff's protected conduct by disclosing Plaintiff's confidential legal information to "numerous inmates and staff members" and by issuing an interview for a library position while the Plaintiff was in quarantine. See ECF No. 16, pgs. 14-15. Plaintiff contends that Defendant Szichak took these adverse actions as a response to Plaintiff filing an appeal to her grievance regarding the prison's paging system. Id. pg.14. In these allegations, Plaintiff states a connection between her protected conduct of filing a grievance and subsequent appeal, and adverse actions taken in response to this right. These actions taken by Defendant Szichak had no legitimate penological purpose because they involved the disclosure of confidential information and preventing access to a prison job. This claim is sufficient to proceed as against Defendant Szichak.

### D.     Harassment

The treatment a prisoner receives in prison and the conditions under which the prisoner is confined are subject to scrutiny under the Eighth Amendment, which prohibits cruel and unusual punishment. See Helling v. McKinney, 509 U.S. 25, 31 (1993); Farmer v. Brennan, 511 U.S. 825, 832 (1994). The Eighth Amendment ". . . embodies broad and idealistic concepts of dignity, civilized standards, humanity, and decency." Estelle v. Gamble, 429 U.S. 97, 102 (1976). Conditions of confinement may, however, be harsh and restrictive. See Rhodes v. Chapman, 452 U.S. 337, 347 (1981). Nonetheless, prison officials must provide prisoners with "food, clothing, shelter, sanitation, medical care, and personal safety." Toussaint v. McCarthy,

11

801 F.2d 1080, 1107 (9th Cir. 1986). A prison official violates the Eighth Amendment only when two requirements are met: (1) objectively, the official's act or omission must be so serious such that it results in the denial of the minimal civilized measure of life's necessities; and (2) subjectively, the prison official must have acted unnecessarily and wantonly for the purpose of inflicting harm. See Farmer, 511 U.S. at 834. Thus, to violate the Eighth Amendment, a prison official must have a "sufficiently culpable mind." See id.

Physical sexual assault by a prison official on an inmate is deeply offensive to human dignity, lacks any legitimate penological objective, and therefore violates the Eighth Amendment. Farmer v. Brennan, 511 U.S. 825, 834 (1994) (such sexual abuse is "simply not part of the penalty that criminal offenders pay for their offenses against society").

That said, inmate sexual harassment claims, which allege sexually inappropriate touching and/or sexually inappropriate comments, require a careful assessment of the unique circumstances of each case. Inmate sexual harassment claims that allege brief inappropriate touching by a correctional official are generally found to be noncognizable, particularly if the alleged touching occurred pursuant to an authorized search. "Even if plaintiff believed that there was a sexual aspect to the search, more is needed." Smith v. Los Angeles County, 2010 WL 2569232, *5 (C.D. Cal. 2010); adopted by 2010 WL 2572570 (C.D. Cal. 2010); aff'd, 452 F. App'x 768 (9th Cir. 2011). And even outside the context of a search, if a defendant is alleged to have grabbed a plaintiff's buttocks for a few seconds, the claim does not give rise to an Eighth Amendment violation. See Berryhill v. Schriro, 137 F.3d 1073, 1076 (8th Cir. 1998). For a sexual harassment claim to be cognizable, Plaintiff must allege an "objectively serious injury (either physical or psychological.)" Watison v. Carter, 668 F.3d 1108, 1112-14 (9th Cir. 2012) (quoting Berryhill, 137 F.3d at 1076).

In Watison, the Ninth Circuit affirmed the dismissal of an inmate's Eighth Amendment sexual harassment claim against a correctional officer who allegedly entered plaintiff's cell while plaintiff was on the toilet, rubbed his thigh against plaintiff's thigh and "began smiling in a sexual contact [sic]," then left plaintiff's cell laughing. 668 F.3d at 1112-14. The Ninth Circuit ruled that "[t]he 'humiliation' Watison allegedly suffered from the incident

with Officer LaGier does not rise to the level of severe psychological pain required to state an Eighth Amendment claim." Id. at 1113. Moreover, the Ninth Circuit found that "Officer LaGier's alleged wrongdoing was not objectively harmful enough to establish a constitutional violation. . . ." Id. at 1114 (citations and internal quotation marks omitted).

While "the Ninth Circuit has recognized that sexual harassment may constitute a cognizable claim for an Eighth Amendment violation, the Court has specifically differentiated between sexual harassment that involves verbal abuse and that which involves allegations of physical assault, finding the later to be in violation of the [C]onstitution." Minifield v. Butikofer, 298 F. Supp. 2d 900, 904 (N.D. Cal. 2004) (citing Schwenk v. Hartford, 204 F.3d 1187, 1198 (9th Cir. 2000). Likewise, allegations of verbal harassment generally do not state a claim under the Eighth Amendment. See Oltarzewski v. Ruggiero, 830 F.2d 136, 139 (9th Cir. 1987). However, "[v]erbal harassment may violate the Constitution when it is 'unusually gross even for a prison setting and [is] calculated to and [does] cause [plaintiff] psychological damage.'" Cox v. Kernan, 2019 WL 6840136, *5 (E.D. Cal. Dec. 16, 2019) (quoting Keenan v. Hall, 83 F.3d 1083, 1092 (9th Cir. 1996)).

Courts appear to be reluctant to recognize a verbal sexual harassment claim under the Eighth Amendment. For example, while a "defendant's alleged statement telling plaintiff to show him her tits would clearly be highly inappropriate, deeply offensive and disrespectful, and would serve no legitimate penological objective, court decisions addressing such claims do not support a conclusion that those alleged comments can be characterized as 'unusually gross even for a prison setting' or as being calculated to cause plaintiff psychological damage.'" Moore v. Calderon, 2021 WL 1541296, at *2 (E.D. Cal. Apr. 20, 2021) (citing Patrick v. Hernandez, 2018 WL 5095130, at *1, *3 (E.D. Cal. Oct. 17, 2018) (finding that plaintiff failed to state a claim for verbal sexual harassment in violation of the Eighth Amendment despite his allegations that defendant verbally harassed him by telling plaintiff, *inter alia*, to "suck my dick," "lick my nuts," and "you want it in the ass"). The court in Moore cited at least ten other cases supporting the proposition that highly inappropriate comments of a sexual nature do not give rise to a verbal

13

harassment claim under the Eighth Amendment.  See Moore, 2021 WL 1541296, at *2.  The court went on to say:

> The comments allegedly made by the defendant here are obviously highly offensive and completely and totally inappropriate.  In light of the sheer number of cases in which such highly inappropriate comments of a sexual nature are allegedly made in the prison setting, perhaps it is time for the Ninth Circuit to reevaluate and address the contours of those circumstances in which the comments are sufficiently "gross even for a prison setting" and to lead to an inference of being calculated to cause psychological damage, so as to state a cognizable Eighth Amendment claim.  Until and unless that happens, however, "unfortunately for plaintiff, the law is clear:  verbal harassment, even if sexual in nature, does not without more violate the Constitution."
>
> Id. (citations omitted).

Allegations of name-calling, verbal abuse, or threats generally are also not unusually gross for a prison setting.  See Carpenter v. Molina, 2021 WL 2226635, at *3 (E.D. Cal. June 2, 2021).  Thus, a defendant's threats to kill or harm a plaintiff are insufficient, without more, to give rise to a cognizable verbal harassment claim.  See Bailey v. Soto, 2019 WL 4452970, at *7-9 (C.D. Cal. July 10, 2019).

However, "[a] threat of deadly force made merely to inflict gratuitous fear and punishment when the party has both the opportunity to carry out the threat and evidences the intent to do so does state a cognizable claim under the Eighth Amendment." Oliver v. Noll, 2012 WL 2055033, at *2 (N.D. Cal. June 5, 2012) (citing Northington v. Jackson, 973 F.2d 1518, 1523 (10th Cir. 1992) (pointing gun at inmate's head and threatening to shoot amounts to cognizable Eighth Amendment claim; and Burton v. Livingston, 791 F.2d 97, 100 (8th Cir. 1986) (drawing gun and terrorizing prisoner with threats of death while using racially offensive language states first amendment, due process and equal protection claims)).  Further, where there is a threat of non-deadly force where, for example, a defendant aims a weapon at a plaintiff "for the malicious purpose of inflicting gratuitous fear", there is a cognizable Eighth Amendment claim.  See Parker v. Asher, 701 F. Supp. 192, 195 (D. Nev. 1988) (holding that "guards cannot aim their taser guns at inmate for the malicious purpose of inflicting gratuitous fear.  Allegations of such sadistic conduct state a cognizable claim of cruel and unusual

14

punishment.").

Where cases are concerned with "abusive language directed at [a plaintiff's] religious and ethnic background, 'verbal harassment or abuse is not sufficient to state a constitutional deprivation under 42 U.S.C. § 1983.'" Carpenter, 2021 WL 2226635, at *3 (quoting Freeman v. Arpaio, 125 F.3d 732, 738 (9th Cir. 1997)) (quoting Oltarzewski, 830 F.2d at 139) (alterations omitted), abrogated on other grounds by Shakur v. Schriro, 514 F.3d 878 (9th Cir. 2008).

The court in Zavala applied this standard. Zavala v. Barnik, 545 F. Supp. 2d 1051 (C.D. Cal. 2008). There, a guard allegedly screamed profanities at an inmate "in regard to Plaintiff's ethnic/racial background," and, while denying the inmate a roll of toilet paper, stated that "it's because of you people that the State is in a budget crisis, you'll have to use the restroom and wipe your ass with your finger!" Id. at 1054. The court held that the "alleged comments about Plaintiff's racial, ethnic, or alienage background did not state a claim." Id. at 1059.

Plaintiff alleges that she was repeatedly sexually harassed by Defendant Szichak. Verbal harassment may violate the Constitution when it is "unusually gross even for a prison setting and [is] calculated to and [does] cause [plaintiff] psychological damage." Keenan v. Hall, 83 F.3d 1083, 1092 (9th Cir. 1996), as amended by 135 F.3d 1318 (9th Cir. 1998). The allegations made in the amended complaint concern statements which were unusually gross and appear to have been calculated to cause Plaintiff psychological damage because Defendant's comments were repeatedly expressed and contained threats of sexual violence. Accordingly, Plaintiff has stated facts sufficient to show that Plaintiff suffered sexual harassment sufficient to rise to the level of a cognizable Eighth Amendment claim against Defendant Szichak.

### E. Equal Protection

Equal protection claims arise when a charge is made that similarly situated individuals are treated differently without a rational relationship to a legitimate state purpose. See San Antonio School District v. Rodriguez, 411 U.S. 1 (1972). Prisoners are protected from invidious discrimination based on race. See Wolff v. McDonnell, 418 U.S. 539, 556 (1974).

1  Racial segregation is unconstitutional within prisons save for the necessities of prison security
2  and discipline. See Cruz v. Beto, 405 U.S. 319, 321 (1972) (per curiam).  Prisoners are also
3  protected from intentional discrimination on the basis of their religion.  See Freeman v. Arpaio,
4  125 F.3d 732, 737 (9th Cir. 1997).  Equal protection claims are not necessarily limited to racial
5  and religious discrimination.  See Lee v. City of Los Angeles, 250 F.3d 668, 686-67 (9th Cir.
6  2001) (applying minimal scrutiny to equal protection claim by a disabled plaintiff because the
7  disabled do not constitute a suspect class); see also Tatum v. Pliler, 2007 WL 1720165 (E.D. Cal.
8  2007) (applying minimal scrutiny to equal protection claim based on denial of in-cell meals
9  where no allegation of race-based discrimination was made); Harrison v. Kernan, 971 F.3d 1069
10 (9th Cir. 2020) (applying intermediate scrutiny to claim of discrimination on the basis of gender).

To state a § 1983 claim based on a violation of the Equal Protection Clause of the Fourteenth Amendment, a plaintiff must allege that defendants acted with intentional discrimination against plaintiff, or against a class of inmates which included plaintiff, and that such conduct did not relate to a legitimate penological purpose.  See Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000) (holding that equal protection claims may be brought by a "class of one"); Reese v. Jefferson Sch. Dist. No. 14J, 208 F.3d 736, 740 (9th Cir. 2000); Barren v. Harrington, 152 F.3d 1193, 1194 (9th Cir. 1998); Federal Deposit Ins. Corp. v. Henderson, 940 F.2d 465, 471 (9th Cir. 1991); Lowe v. City of Monrovia, 775 F.2d 998, 1010 (9th Cir. 1985).

Plaintiff asserts that because she is being held in facility "B" and not in facility "D" or "E" that she is restricted from library legal access. Plaintiff has not alleged facts to support a finding that she has been assigned to facility "B" because of her protected status as female or transgender. Prisoner is not a protected class under the Equal Protection Clause of the Fourteenth Amendment. There is not a causal link between her status as a member of a protected class and her restrictions from library access. Because Plaintiff has not alleged facts to support a finding of discrimination based on a protected class, Plaintiff fails to state a claim for violation of the Equal Protection Clause. Plaintiff will be provided an opportunity to amend.

/ / /

/ / /

### F. **Loss or Destruction of Property**

To the extent Plaintiff is claiming a property interest in her lost or missing mail, Plaintiff's claim must fail. Where a prisoner alleges the deprivation of a liberty or property interest caused by the random and unauthorized action of a prison official, there is no claim cognizable under 42 U.S.C. § 1983 if the state provides an adequate post-deprivation remedy. See Zinermon v. Burch, 494 U.S. 113, 129-32 (1990); Hudson v. Palmer, 468 U.S. 517, 533 (1984). A state's post-deprivation remedy may be adequate even though it does not provide relief identical to that available under § 1983. See Hudson, 468 U.S. at 531 n.11. A due process claim is barred where the deprivation is foreseeable and the state can therefore be reasonably expected to make pre-deprivation process available. See Zinermon, 494 U.S. at 136-39. An available state common law tort claim procedure to recover the value of property is an adequate remedy. See id. at 128-29.

Plaintiff has not alleged facts sufficient to show that Plaintiff's purported loss of mail due to the changed paging policy was foreseeable. Moreover, the State provides an adequate post-deprivation remedy in the form of common-law causes of action, which can provide compensation for property loss. See Barnett v. Centoni, 31 F.3d 813, 816-17 (9th Cir. 1994) (noting California law provides an adequate post-deprivation remedy for property deprivations, citing Cal. Gov't Code §§ 810-895). Thus, to the extent Plaintiff claims she was deprived of property due to the loss of her mail, she has failed to state a claim

### G. **Visitation**

To the extent that Plaintiff is claiming a violation of her constitutional rights based on inability to receive visitors, her claim must fail. "It is clear that the First Amendment right of free speech applies within prison walls" and restrictions placed on a prisoner's ability to "communicate with persons outside prison walls" may violate the First Amendment. Valdez v. Rosenbaum, 302 F.3d 1039, 1048 (9th Cir. 2002). However, prisoners do not have an unfettered right to visitation. "Some curtailment of that freedom must be expected in the prison context." Overton v. Bazzetta, 539 U.S. 126, 131 (2003). Limitations on visits are permissible if they bear a rational relation to "legitimate penological interests." Turner v. Safley, 482 U.S. 78, 89 (1987).

Only where all visitation privileges have been revoked permanently or for a substantial period of time will the deprivation take on constitutional proportions. See Overton, 539 U.S. at 130; Dunn v. Castro, 621 F.3d 1196, 1204 (9th Cir. 2010). The length of any deprivation is relevant to determining whether the deprivation amounts to punishment. See generally, Pierce v. Cty. of Orange, 526 F.3d 1190, 1205, 1212-13 (9th Cir. 2008). Accordingly, to assert a violation of her First Amendment right to free speech, Plaintiff must plausibly allege that the deprivation was not reasonably related to a legitimate penological interest, that the deprivation was substantial or permanent, and that Plaintiff had no alternative means of communication.

If Plaintiff is asserting a violation of the Due Process Clause of the Fourteenth Amendment, that Clause does not guarantee unfettered visitation. See Kentucky Dep't of Corr. v. Thompson, 490 U.S. 454, 460 (1989). While incarcerated, prisoners have no constitutional right to contact visits. Gerber v. Hickman, 291 F.3d 617, 621 (9th Cir. 2002) (en banc).

Plaintiff has failed to state a cognizable claim that Defendants violated her constitutional rights based on her inability to receive visitors under the First and Fourteenth Amendments. Plaintiff has not sufficiently alleged that she was restricted from all forms or means of communication or that her communications privileges were permanently revoked by Defendants.

First, Plaintiff's assertions that she was unable to receive visitors are speculative—there are no facts that any visitors have actually been denied by Defendants. Instead, Plaintiff alleges only that her legal mail was destroyed and, as a result, she was unable to receive visitors and use the telephone; on that basis, Plaintiff asserts that, until she made timely court filings, her visitors would not meet with her. Second, Plaintiff has not stated a factual connection between any intentional action on the part of Defendants that prevented Plaintiff from communicating with others. Third, Plaintiff has also failed to allege any facts that her communications privileges were permanently or substantially revoked by the intentional actions of Defendants. Lastly, as Plaintiff's allegations demonstrate, it is not Defendants specific conduct toward Plaintiff that has denied her visitation, but it is Plaintiff's own visitors that have refused her. Therefore, any claim for violation of the First or Fourteenth Amendments based on purported conduct by Defendants

that precluded visitation fails to state a claim. To the extent that Plaintiff alleges that she was precluded from communicating with her attorney in relation to her access to courts claims, those allegations are addressed above.

### H. Association

With regard to claims that Plaintiff was prevented from associating with visitors in violation of the First amendment, those claims too must fail. By necessity, incarceration restricts the scope of a prisoner's associational rights. Overton v. Bazzetta, 539 U.S. 126, 131-32 (2003); Rizzo v. Dawson, 778 F.2d 527, 532 (9th Cir. 1985). "[F]reedom of association is among the rights least compatible with incarceration," and some curtailment must be expected in the prison context. Overton, 539 U.S. at 131.

Here, Plaintiff is not challenging the visitation policy or asserting that Defendants denied Plaintiff visitation from particular visitors. Plaintiff makes only speculative and conclusory statements that she was unable to meet with visitors until she made timely court filings; but this does not implicate specific decisions or actions on the part of Defendants toward Plaintiff that they intentionally prevented her from receiving visitors. Indeed, it is not Defendants that denied Plaintiff visitation, but it is the visitors who denied Plaintiff visits. Plaintiff has neither alleged facts that she has been denied of visitation by Defendants, nor that Defendants have refused to approve Plaintiff's visitors. Based on these facts, Plaintiff has failed to state a claim based on her First Amendment right to freedom of association.

### III. CONCLUSION

Because it is possible that the deficiencies identified in this order may be cured by amending the complaint, Plaintiff is entitled to leave to amend prior to dismissal of the entire action. See Lopez v. Smith, 203 F.3d 1122, 1126, 1131 (9th Cir. 2000) (en banc). Plaintiff is informed that, as a general rule, an amended complaint supersedes the original complaint. See Ferdik v. Bonzelet, 963 F.2d 1258, 1262 (9th Cir. 1992). Thus, following dismissal with leave to amend, all claims alleged in the original complaint which are not alleged in the amended complaint are waived. See King v. Atiyeh, 814 F.2d 565, 567 (9th Cir. 1987). Therefore, if

Plaintiff amends the complaint, the Court cannot refer to the prior pleading in order to make Plaintiff's amended complaint complete. See Local Rule 220. An amended complaint must be complete in itself without reference to any prior pleading. See id.

If Plaintiff chooses to amend the complaint, plaintiff must demonstrate how the conditions complained of have resulted in a deprivation of Plaintiff's constitutional rights. See Ellis v. Cassidy, 625 F.2d 227 (9th Cir. 1980). The complaint must allege in specific terms how each named defendant is involved, and must set forth some affirmative link or connection between each defendant's actions and the claimed deprivation. See May v. Enomoto, 633 F.2d 164, 167 (9th Cir. 1980); Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).

Finally, Plaintiff is warned that failure to file an amended complaint within the time provided in this order may be grounds for dismissal of this action. See Ferdik, 963 F.2d at 1260-61; see also Local Rule 110. Plaintiff is also warned that a complaint which fails to comply with Rule 8 may, in the Court's discretion, be dismissed with prejudice pursuant to Rule 41(b). See Nevijel v. North Coast Life Ins. Co., 651 F.2d 671, 673 (9th Cir. 1981).

Because the complaint appears to otherwise state cognizable claims, if no amended complaint is filed within the time allowed therefor, the Court will issue findings and recommendations that the claims identified herein as defective be dismissed, as well as such further orders as are necessary for service of process as to the cognizable claims.

Accordingly, IT IS HEREBY ORDERED that Plaintiff may file a second amended complaint within 30 days of the date of service of this order.

Dated: July 25, 2023

_____
DENNIS M. COTA
UNITED STATES MAGISTRATE JUDGE